May it please the court, Fred Rowley, Jr. for the government. The district court erred in ordering this defendant released. The severity of the charges in this case, which include participating in the racketeering activities of a prison gang, defendant's long and violent criminal history, and his record of violating parole, weigh in favor of finding both that he is a serious danger to the community and a serious flight risk. All the monomany factors weigh in favor of the tension in this case. The first factor, the seriousness of the charges, they suggest that the defendant poses a serious threat to the public, both in general and with respect to specific people who might be witnesses in this case. The defendant is charged with substantive RICO count, RICO conspiracy, and a VICAR count, violent crime in aid of racketeering. Two of the underlying RICO acts involve attempted murders. One that was actually committed by the defendant and one that he ordered. In addition, the defendant is charged with witness tampering and witness retaliation. All of those crimes indicate that if released, this defendant might hurt someone else and indeed might hurt a witness in this case. One of the things that was apparently bothering the district judge in this case was the length of his incarceration. Yes, Your Honor. And I don't think that is directly challenged here, but can you give us some notion as to why he's been incarcerated so long between the charge and getting to trial? Absolutely, Judge Fletcher. The reason that this case has been pending pretrial for so long is that there have been a variety of continuances, all of which have been sought by the defense. The initial continuance was because the government had charged or was penitently seeking the death penalty against two defendants and there was a delay to permit the defendants to present to the Department of Justice reasons why the government ought not to seek the death penalty. Then there was a continuance to permit the defense to go through the luminous discovery. Following that, there were a series of continuances, at least three of which were sought by the defendant himself. Because of medical reasons, he was receiving treatment that made it difficult for him to aid in his and assist in his defense. And in addition, the defense counsel needed additional time to prepare. And the last continuance, I believe it might be the last two continuances, have also been necessitated by defense subpoenas issued to the California Department of Corrections. So all the continuances have been sought by the defense, and this is critical. In Gelfuso, this Court did note that the length of detention could conceivably give rise to a due process concern, but the length of the detention has to be considered with the responsibility for the delay. And in this case, the government doesn't bear responsibility for the delay. Returning back to the most or many factors, the second factor, and this is a critical factor, it was set forth in the pretrial services report, is the defendant's criminal history. It's an extensive one, Your Honor, and it includes violent crimes. The defendant was convicted of shooting into a dwelling, of assault with a deadly weapon, and with assault of a deadly weapon on a police officer. That was all on one occasion, not three different occasions. Three different convictions, Your Honor. Three different convictions, but it all came out of one's event, right? That's not my understanding, Your Honor. I believe that they're three different convictions. Well, now, the last conviction for assault with a deadly weapon on a police officer included other offenses for which he was convicted. I believe it was false imprisonment. Wasn't he holding somebody in a house and a policeman came and he shot? That's right, Your Honor. So it was just one event, wasn't it? Your Honor, there were multiple convictions arising out of that incident. Okay. But the convictions that I've just laid out are actually separate incidents. I believe in the 80s he was convicted of shooting into a dwelling. Then he was convicted of assault with a deadly weapon. And then later on in 1992, he was convicted of a crime based upon the offense that Your Honor is describing. And that also involved false imprisonment, and I believe he was also convicted of being a felon in possession of a firearm. So there were three convictions arising out of this 1992 incident in which there was a standoff with police officers. And this is a critical offense because it bears directly on this defendant's dangerousness with respect to the people who would supervise him, the pretrial services officers. This defendant absconded from parole. And when parole and police officers went to arrest him, as Judge Bea has just pointed out, the defendant holed himself up in a motel room, held his girlfriend against his will, and took shots and exchanged gunfire with police officers. In that incident, it's also critical to note, because this does bear on flight risk, the defendant stated that he would rather kill himself and kill his girlfriend than return to jail. So that incident in and of itself illustrates well the risk that this defendant would pose to other people if released. Now the district court dismissed or felt that the defendant's criminal history was less significant than the government believes it is for a couple of reasons. The first reason was that these crimes took place in the past. But the last time the ---- You say that about every crime. That's exactly right, Your Honor. In addition, the last time this defendant was released on parole, which was in 2001, the defendant participated with Codefendant Deanna in a robbery of a woman in which Codefendant Deanna took her dentures while the defendant menaced her boyfriend. This happened in June of 2001. And shortly thereafter, he was taken into custody and remained in custody and remains indeed in custody today. So the notion that this defendant's criminal history, that that can simply be dismissed as something that is remote and that took place in the past, the government submits is not correct. The second reason the district court cited was that the defendant had behaved well while in federal custody at MDC. And the government submits that that's not a significant factor because the defendant was held under such strict conditions. So the defendant's criminal history and his background is certainly pertinent here. And the government believes ways in favor of detaining this defendant pending trial. If the Court has no questions, I'll reserve time for ---- Do you have any comment upon the trial court's finding that it was a significant factor in assessing his flight risk that his mother loved him dearly? Your Honor, certainly the ties that this defendant has to his family is a factor to consider. The government doesn't dispute that. But it cannot outweigh this defendant's criminal history and his conduct on parole. The defendant has been released eight times on parole. And in each instance, he's violated parole and been revoked and returned to custody. Do you agree that on the two elements of flight risk and danger to the community, you have different burdens of proof? Yes, Your Honor. As for dangers of the community, you have to show by clear and convincing evidence, right? Yes, Your Honor. Whereas, the flight risk, you only have to show for ponderance of the evidence. That's right, Your Honor. Under this Court's decision, there are more than many. And the government believes that both standards have been met here. Okay. Let's hear from the other side. Good morning, Your Honors. My name is Larry Baffin, and I represent the defendant appellee Jeffrey Wangenhorst. I'd like to begin by addressing some of the points raised by counsel with respect to the 3142 factors. Before we get there, can we ask you, pardon me, Mr. Baffin, for interrupting you, but what is our standard of review? Do we review Judge Hatter's ruling based on abuse of discretion, on substantial evidence, or de novo? It's a mixed standard, Your Honor. It is with deference to factual findings, unless the court was clearly erroneous, the district court, that is. It's also an independent determination by this Court whether or not the 3142 factors cannot be said to have, by clear and convincing evidence, any type of safety condition or conditions to ensure against continuing danger, and whether or not there's any condition or conditions that, under a preponderance standard, would be able to ensure against flight. What facts did Judge Hatter find beyond the fact that his mother loves him and his crimes took place in the past? I think when Judge Hatter considered his criminal history, as part of his criminal history, he took into consideration his behavior for the past three years at MDC. And I find it somewhat disingenuous that the government would argue that we can't look at the behavior by Mr. Langenhorst at MDC because he's in the chute. He's in the special housing unit. He's in ADSEG. He's locked up in a singular cell, when, in fact, the heart of the case in a prison RICO is that these prison games have such lines of communications. It extends within the prison walls. Now, are these factual findings that Judge Hatter made that we give deference to? Well, I don't know if they were factual findings that he made, but it's certainly part of the record, if we look at the indictment and the allegations of the indictment that Mr. Langenhorst and Mr. Bridge were running a narcotics operation both in and outside of the prison walls. I certainly think that is something that goes into the balance. It may go into the balance, but what I'm getting at is we look at things a little differently depending on what the decision was, and Judge Hatter's ultimate decision was to release him. But the factual findings that underpin that decision by Judge Hatter seem to me to be fairly scant. And there's a reason why they're fairly scant, Your Honor, because the government did not respond at the district court level to the motion that was made in writing, nor did they provide any of the documentation they provided to this court, which has put me in a difficult position. If, in fact, the government had supplied to Judge Hatter the entire record that they've supplied to you under their government's excerpt, the 302s by the FBI, the prior rap sheets, the incident reports relating to the prior rap sheets, I would have been able to have the opportunity to reject that proffer, and there would have been an evidentiary hearing. There would have been individuals that were called to either discuss that proffer or those documents and the evidence therein. There would have been a record that would have been made to show, one, the reliability of the supporting documentation that the government has provided to this court, two, the problems inherent in the credibility of the individuals who presented that type of information. For instance, in their argument, they claim Mr. Wangenhorst is a shot caller for the NLR. There is, I think, two pages in their government's excerpt of record which refers to the fact that he's a shot caller. It's either a FBI 302 report or a CDC document, which has one inmate claiming he spoke to another inmate who told him Wangenhorst was a shot caller. We don't know what those inmates are in prison for. We don't know whether they debriefed because they were given some kind of consideration. Those are the types of facts that aren't present here because of the way in which this was done. Kennedy. Did you make a motion to strike the portions of the record which were proffered by the government on appeal but were not supplied to Judge Hatterr?  No, I did not. My understanding from reading Motamendi and the other cases that were cited is that the government has the burden, not to show that he's simply a danger or a continuing danger to the community, but also that there are no conditions or combinations of conditions that can reasonably assure against the continuing danger. And the same holds true for flight, only with a preponderance standard. It's interesting, pretrial services did not find that Mr. Wangenhorst was a flight risk. I think there was a colloquy between Judge Hatterr in the transcript of January 28th and the pretrial service officer, wherein he confirmed that pretrial services did not find that the defendant was a flight risk here. It really leaves us with the question, was the district court clearly erroneous in finding that severe limitations on the defendant's movements, if released, if granted pretrial release, could reasonably assure against continuing safety concerns? And I think that with the specifications, with the terms and conditions that were imposed, electronic monitoring in combination with GPS, in combination with home detention, in combination with a list of approved contacts by pretrial services, minimum travel that would have to be approved by pretrial services, all of those terms and conditions, Your Honor, they mitigate against and they reasonably assure against continuing danger. I cited in my brief a district court case from Massachusetts, Patriarca, in which the court made very similar stringent restrictive conditions for pretrial release. And a RICO case involving the Mafia and involving an individual who was charged with two predicate offenses under the Travel Act that included extortion. Kennedy. Is it your point that on the prior eight occasions on which he violated parole, he was not subject to any of these restraints? Yes. I would admit that. But in contacts approval, when you're on parole, you are not supposed to contact usually people with criminal backgrounds. I would agree. But here's the distinction between CDC monitoring and what Judge Hatter imposed in this case. The government referenced the fact in their brief that Mr. Wangenhorst was placed on the highest level of parole monitoring. Nowhere in their brief did they describe what that level consisted of. We have no means before us to determine what CDC's highest level of monitoring is. Certainly from reading that portion of the government's brief and the excerpt of record which supports it, it seems like it was an individual parole officer who does more than minimal contacts with the defendant to ensure he's meeting his conditions of parole. That's not what we're talking about. Your point, I guess, is that when he's on a loose parole system, even though it's the highest level, very little supervision, very little control, he violates it. But he wouldn't if he was very closely watched. Is that what you're telling us? No. What I'm telling you, Your Honor, is that his record is serious. No one is going to say otherwise. His prior record is serious. The question is, can conditions or combination of conditions be imposed to ensure against continuing danger in this case with a reasonable assurance? And did the district court clearly make that finding in clearly erroneous terms? And I think that when the court looked at, and I go back to the balance, when the court looked at his prior record, all of the problems in attendance there, and the court looked at his behavior at MDC, there were other defendants in this case, Your Honor, that had to be moved out of the SHU at MDC and placed at San Bernardino because they were causing problems. There was a drug testing and a search of cells up in Eight North belonging to all the NORs the day after one of them flipped and went over to the government. He could get into trouble at MDC, and I think it's disingenuous for the government to say otherwise. If he so intended to continue to create problems, he could do it at the SHU at Eight North, at MDC. Okay. Might I just make one more comment, Your Honor? Yes, please. If we take the government's argument one step further, obviously their greatest impact is the prior convictions and his prior criminal history. At the time he was, right now, as we stand here today, he has no CDC holds. He is under no obligation. I place that as a document, an exhibit to my defendant's record attached to my motion. If we carry their argument out, does that mean that anytime someone is given or charged with a serious offense in the federal system, and they have a terrible criminal history, that as a matter of right they should be denied bail because of the danger commitment, the code doesn't go that far. Are we going to say that anyone that has a determinate sentence that they served, they paid their debt for, if they pick up and are charged with another case in the federal system, that we look only to their prior history, and we say we're going to deny bond as a matter of right? Thank you. Thank you very much. The government saved a little time in response. Sure, and I'll try to be quick. A few responses. First, on the inconsistency between the government's charges in this case and the defendant's behavior at MDC, the conditions under which the defendant was held by the general population and had much greater freedom to engage in criminal activities. Even if the court assumes that the defense is correct and that this defendant could get into some sort of trouble at MDC, certainly the fact that this defendant was held under strict conditions, he stayed in his cell by himself, he ate and took his meals by himself, and was in the prison yard or was in the recreation yard by himself, those go a long way to explaining why he hasn't gotten into trouble at MDC. Second, there aren't any portions of the record that were not presented to Judge Hatter to address Judge Bea's question. The government filed the motion for reconsideration in which it presented all the evidence that is currently before this Court. The district court, Judge Hatter, denied that motion. The government appealed both the denial of the motion for reconsideration and the initial bail order. So all of that is properly before the Court. The third point is whether ---- Your Honor, the denial of the reconsideration motion simply says that the district court considered the government's submission or considered the government's filing and denied it. The third point is whether the court can fashion conditions of supervision or a combination of conditions of supervision that would adequately protect the public. This defendant was subjected to very close supervision by the CDC. The declaration of Special Agent Bulk says that the defendant was subjected to close monitoring and I believe it says frequent monitoring. Notwithstanding that, the defendant violated his parole three times, managed to assault Howard Martin, managed to threaten Summer Sinclair, and both of those are bases for charges in this case, and also managed to rob the victim in that incident in June 2001 that the government has described in its brief. So even though this defendant has been subjected to close supervision in the past, that hasn't been sufficient to protect the public. And finally, with respect to the patriarchy case, I think if the Court reviews that case, the conditions there were more stringent than those imposed by Judge Hatter. There are a number of loopholes in the conditions that were imposed by the judge. The defendant could leave the residence, for example, to go to church, to go to a doctor, to see his lawyers, that sort of thing. And the court has not reviewed the conditions that were imposed by Judge Hatter.  And the court has not reviewed the conditions that were imposed by Judge Hatter. Thank you. Thank you very much. Thank you. Thank both sides for a useful argument in this case. In this case, the United States versus, let me make sure I pronounce it correctly, Longahorse is now submitted for decision and we stand in adjournment. Thank you. Thank you.
judges: T.G. Nelson, W. Fletcher, Bea